UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOSEPH H. MASRI,

                Plaintiff,

    -against-                                   Docket: 17-CV-4094 (KMK)

ERIC OLE THORSEN, THORSEN LAW OFFICES,
ZION SALL & ESTHER R. MASRI,

                Defendants.
------------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS ON BEHALF OF DEFENDANTS ZION SAAL AND ESTHER R. MASRI

                                                                    Respectfully Submitted,

                                                                    CATANIA, MAHON,
                                                                    MILLIGRAM & RIDER, PLLC
                                                                    *Attorneys for Defendants*
                                                                    *Zion Saal (i/s/h/a "Zion Sall") and*
                                                                    *Esther R. Masri*
                                                                    One Corwin Court
                                                                    Newburgh, NY 12550

Richard M. Mahon, II, Esq., of counsel
Michael R. Frascarelli, Esq., of counsel

P.O. BOX 1479 • NEWBURGH, N.Y. 12551 • (845) 565-1100

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT ........................................................................................................................... 2

    I.   Standard of Review ................................................................................................ 2

    II.  Because the Complaint does not assert any invidious discriminatory motive underlying the alleged conspiracy against Plaintiff, the federal civil rights claim must be dismissed ......................................................................................... 3

    III. Plaintiff's defamation claims must be dismissed as they fail to allege any "special harm." ........................................................................................................ 4

    IV. Because Mr. Saal was allegedly only involved in publishing content on the internet that was authored by others, Plaintiff's defamation claims against him are barred by the Communications Decency Act. ................................................. 7

    V.  Plaintiff's emotional distress-based claims fail to allege any extreme and outrageous conduct as a matter of law ..................................................................... 9

        A.  The standard for stating an intentional infliction of emotional distress claim "is extremely difficult to satisfy." ........................................................ 9

        B.  Mr. Saal's alleged conduct is also immune from IIED tort liability, particularly given that the allegations against him patently fail to assert anything "extreme and outrageous." ................................................................ 10

        C.  In their full context, Plaintiff's allegations against Mrs. Masri also fail to rise to the level of "extreme and outrageous" as a matter of law. ...................... 10

    VI. As alleged, the state law claims against Defendant Saal are barred by the applicable one-year statute of limitations for intentional torts. ........................... 13

    VII. In the alternative, Plaintiff's state-law claims should not be heard in this forum ............ 14

CONCLUSION ....................................................................................................................... 15

## TABLE OF AUTHORITIES

Cases

*Albert v. Loksen,*
  239 F.3d 256 (2d Cir. 2001) .................................................................................................. 5
*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................................... 4, 10, 11, 12
*Ava v. NYP Holdings, Inc.,*
  64 A.D.3d 407, 885 N.Y.S.2d 247 (N.Y. App. Div. 2009) ...................................................... 5
*Barnes v. Yahoo!, Inc.,*
  570 F.3d 1096 (9th Cir. 2009) ................................................................................................ 8
*Boyle v. Stiefel Labs. Inc.,*
  204 A.D.2d 872, 612 N.Y.S.2d 469 (N.Y. App. Div. 1994) .................................................... 6
*Ceara v. Deacon,*
  68 F. Supp. 3d 402 (S.D.N.Y. 2014) ..................................................................................... 13
*Cine SK8, Inc. v. Town of Henrietta,*
  507 F.3d 778 (2d Cir. 2007) ............................................................................................... 3, 4
*Deanda v. Hicks,*
  137 F. Supp. 3d 543 (S.D.N.Y. 2015) ..................................................................................... 9
*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC,*
  194 F. Supp. 3d 263 (S.D.N.Y. 2016) ..................................................................................... 8
*Estreicher v. Oner,*
  148 A.D.3d 867, 49 N.Y.S.3d 530 (N.Y. App. Div. 2017) ................................................... 13
*Federal Trade Commn. v. Accusearch Inc.,*
  570 F.3d 1187 (10th Cir. 2009) .............................................................................................. 8
*Jordan v. Bates Advert. Holdings, Inc.,*
  292 A.D.2d 205, 738 N.Y.S.2d 348 (N.Y. App. Div. 2002) .................................................. 14
*Kalyanaram v. Am. Ass'n of Univ. Professors at New York Inst. of Tech., Inc.,*
  742 F.3d 42 (2d Cir. 2014) ..................................................................................................... 4
*LaForgia v. Hoch,*
  No. 15-CV-8589 (KMK), 2018 WL 4682019 (S.D.N.Y. Sept. 28, 2018) ........................... 3, 4
*Masri v. Masri,*
  55 Misc. 3d 487, 50 N.Y.S.3d 801 (N.Y. Sup. Ct. 2017) ........................................................ 7
*Matican v. City of New York,*
  524 F.3d 151 (2d Cir. 2008) ................................................................................................. 14
*Meloff v. New York Life Ins. Co.,*
  240 F.3d 138 (2d Cir. 2001) ................................................................................................... 6
*Nunez v. A-T Fin. Info. Inc.,*
  957 F. Supp. 438 (S.D.N.Y. 1997) ......................................................................................... 6
*Shiamili v. Real Estate Grp. of New York, Inc.,*
  17 N.Y.3d 281, 952 N.E.2d 1011 (N.Y. 2011) ....................................................................... 8
*Staehr v. Hartford Fin. Servs. Grp., Inc.,*
  547 F.3d 406 (2d Cir. 2008) ................................................................................................. 13
*Universal Communication Sys., Inc. v. Lycos, Inc.,*
  478 F.3d 413 (1st Cir. 2007) .................................................................................................. 8

CATANIA, MAHON, MILLIGRAM & RIDER, PLLC
P.O. BOX 1479 • NEWBURGH, N.Y. 12551 • (845) 565-1100

1672876_2

*Van Buskirk v The New York Times Co.*,
  325 F.3d 87 (2d Cir. 2003) ................................................................................................ 13
*Weslowski v. Zugibe*,
  14 F. Supp. 3d 295 (S.D.N.Y. 2014) ................................................................................. 14

## Statutes

28 U.S.C. §1367(c)(3) .............................................................................................................. 14
42 U.S.C. § 1985(3) ............................................................................................................. 3, 4
47 U.S.C. §230 ....................................................................................................... 2, 7, 8, 10
47 U.S.C. §230(f)(2) .................................................................................................................. 8

## Rules

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 2, 3, 4
Fed. R. Civ. P. 8 ........................................................................................................................ 2
Fed. R. Civ. P. 9(g) .................................................................................................................... 6
Fed. R. Evid. 201(e)(2) .............................................................................................................. 4
N.Y. C.P.L.R. §205(a) ............................................................................................................. 14
N.Y. C.P.L.R. §215(3) ............................................................................................................. 13

## PRELIMINARY STATEMENT

This lawsuit is nothing more than a malicious attempt by the Plaintiff, Joseph H. Masri, proceeding *pro se*, to harass, intimidate, and seek revenge upon his ex-wife, defendant Esther R. Masri ("Mrs. Masri"), and the attorney who represented her in her successful divorce and child support proceeding against him, Eric Ole Thorsen (together with defendant Thorsen Law Offices, the "Thorsen Co-Defendants").

Despite Plaintiff's innumerable instances of unjustifiable, bad-faith conduct toward Mrs. Masri over many years—in legal proceedings, in the community, and privately—Mrs. Masri was able to obtain a judgment of divorce and award of child support against him on January 13, 2017, from the New York State Supreme Court, as well as an award of sole custody of the couple's two children on April 19, 2017, from the New York State Family Court. Plaintiff so vigorously yet baselessly fought these proceedings that they resulted in two separate reported decisions, of which this Court should take judicial notice due to their relevance to this matter—and particularly due to Plaintiff's failure to mention them.

Then, only one month following the custody award, Plaintiff brought this purported civil rights, defamation and emotional distress action against Mrs. Masri and the Thorsen Co-Defendants. The retaliatory motivation is patent, and the Court should not credit any of Plaintiff's unsupported allegations seeking to tie the defendants to an alleged plot against him, and dismiss this action in its entirety[1] and with prejudice.

Five months after filing this action, Plaintiff amended his complaint to add Zion Saal ("Mr. Saal") as a party-defendant, on the basis that Mr. Saal hosted content on the internet that was

---

[1] This motion does not specifically address Plaintiff's claim denominated as the "Sixth Cause of Action," which is directed solely at the Thorsen Co-Defendants. It is anticipated, however, that said co-defendants will furnish further grounds directed at this claim in an independent motion to dismiss, pursuant to their counsel's correspondence to the Court dated June 10, 2019 (Document 24).

intended to garner community support for Mrs. Masri's legal efforts. Not only are Plaintiff's claims against him defective for the same reasons as against the original defendants, but Mr. Saal is immune, as a host of internet content, from state tort liability pursuant to federal statute, the Communications Decency Act, 47 U.S.C. §230; and, in any event, those state-law tort claims are barred by the applicable one-year statute of limitations.

Accordingly, for the further reasons set forth below, as well as those further reasons set forth in the accompanying Declaration of Richard M. Mahon, II, Esq., it is respectfully submitted that this action should be dismissed in its entirety and with prejudice.

## BACKGROUND

For a full statement of relevant background information and procedural history, the Court is respectfully referred to the accompanying Declaration of Richard M. Mahon, II, Esq.

## ARGUMENT

### I. STANDARD OF REVIEW

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), this Court recently stated the applicable standard of review as follows:

> The Supreme Court has held that although a complaint does not need detailed factual allegations to survive a motion to dismiss, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Indeed, Rule 8 of the Federal Rules of Civil Procedure demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement. Instead, a complaint's factual allegations must be enough to raise a right to relief above the speculative level. . . .
>
> In considering [a] Motion To Dismiss, the Court is required to accept as true all of the factual allegations contained in the Complaint. And, the Court

> must draw all reasonable inferences in favor of the plaintiff. Additionally, in adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.

*LaForgia v. Hoch*, No. 15-CV-8589 (KMK), 2018 WL 4682019, at *3 (S.D.N.Y. Sept. 28, 2018) (internal citations, quotations and alterations omitted).

## II. BECAUSE THE COMPLAINT DOES NOT ASSERT ANY INVIDIOUS DISCRIMINATORY MOTIVE UNDERLYING THE ALLEGED CONSPIRACY AGAINST PLAINTIFF, THE FEDERAL CIVIL RIGHTS CLAIM MUST BE DISMISSED

Plaintiff's first cause of action, alleging a conspiracy to deprive him of his civil rights, must fail because Plaintiff does not allege, as a baseline matter, any protected religious conduct or belief.

This type of federal conspiracy claim has essentially five elements:

> In order to state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. A § 1985(3) conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.

*Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (internal citations and quotation marks omitted). It is the fifth (though unnumbered) element that Plaintiff patently fails to allege in his Amended Complaint.

Despite alleging, in conclusory fashion, that the defendants' conduct was motivated by religious discrimination, Plaintiff fails to describe the "religious beliefs" underlying his §1985(3) claim, or how those beliefs may differ from those of the defendants and give rise to a potential equal protection violation. Plaintiff merely recites allegations of "vehement animus directed at Plaintiff over his ultra-orthodox religious beliefs and practices" (Amd. Compl. at ¶7), that the

defendants "act[ed] jointly, intentionally and maliciously with intensive animus and discrimination toward Plaintiff, due to . . . his religious beliefs" (id. at ¶24), and that the defendants have "intensive hate toward Plaintiff over the practice of his religious beliefs" (id. at ¶26). These "naked assertions devoid of further factual enhancement" are insufficient to apprise the Court or the defendants of a valid §1985(3) claim as a matter of law. *LaForgia v. Hoch, supra, (quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

Moreover, Plaintiff's failure to detail the alleged "religious beliefs" at issue appears to be an attempt to conceal the true underlying dispute: that Plaintiff was married to defendant Mrs. Masri, who is also a member of the same Ultra-Othodox Jewish community; that the Thorsen Co-Defendants represented Mrs. Masri in *successful* matrimonial litigation against Plaintiff; and that Plaintiff undertook this lawsuit in retaliation against them.[2] *See* Mahon Decl. at ¶¶ 9-11. The fact that Mr. Saal was not even made a party to this action at the outset—only Mrs. Masri and her attorneys were named (*id.* at ¶12)—further evinces Plaintiff's unfounded, improper retaliatory motive here.

Accordingly, because Plaintiff has not and cannot allege any facts to support the alleged religious discrimination by defendants, his conspiracy claim based thereon should be dismissed.

### III. PLAINTIFF'S DEFAMATION CLAIMS MUST BE DISMISSED AS THEY FAIL TO ALLEGE ANY "SPECIAL HARM."

Defamation, the making of a false statement about a person that tends to expose the person to public contempt, ridicule, aversion or disgrace, or

---

[2] On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court is permitted to take judicial notice of the facts that: multiple matrimonial and custody proceedings were filed between Plaintiff and Mrs. Masri in state court; that the Thorsen Co-Defendants appeared as counsel of record for Mrs. Masri in certain of those proceedings; and that two different state courts (i) granted Mrs. Masri a secular divorce from Plaintiff and an award of child support against him on January 13, 2017, and (ii) granted Mrs. Masri full custody of the couple's two children on April 19, 2017. *See* Mahon Decl. at ¶¶ 9-11 and n.1; Fed. R. Evid. 201(e)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it. . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Kalyanaram v. Am. Ass'n of Univ. Professors at New York Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014).

> induce an evil opinion of him or her in the minds of right-thinking persons, and to deprive him or her of their friendly intercourse in society, can take one of two forms—slander or libel. Generally speaking, slander is defamatory matter addressed to the ear while libel is defamatory matter addressed to the eye.

*Ava v. NYP Holdings, Inc.*, 64 A.D.3d 407, 411, 885 N.Y.S.2d 247, 250–51 (N.Y. App. Div. 2009) (internal quotation marks and citations omitted).

"The elements of a cause of action for slander under New York law are (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) of and concerning the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege." *Albert v. Loksen*, 239 F.3d 256, 265–66 (2d Cir. 2001) (internal quotation marks omitted).

> To establish a cause of action in slander, the plaintiff must show either that the statement complained of caused him or her 'special harm' or that it constituted slander 'per se.' Generally speaking, 'special harm' means the loss of something having economic or pecuniary value. The four categories of statements that have historically constituted slander per se in New York are those that (i) charge the plaintiff with a serious crime; (ii) tend to injure the plaintiff in his or her trade, business or profession; (iii) imply that the plaintiff has a loathsome disease; or (iv) impute unchastity to a woman. The issue of whether a statement is actionable per se is for the court.

*Id.* at 271 (2d Cir. 2001) (internal quotation marks and citations omitted).

Similarly:

> New York requires a libel plaintiff to prove five elements: (1) a written defamatory statement of fact regarding the plaintiff; (2) published to a third party by the defendant; (3) defendant's fault, varying in degree depending on whether plaintiff is a private or public party; (4) falsity of the defamatory statement; and (5) injury to plaintiff. Plaintiff's compensable injury is presumed if the defamatory statement falls within a category of libel *per se*. A written statement that charges a person with the commission of a crime or tends to disparage a person in the way of his office, profession or trade is libel *per se*.

*Meloff v. New York Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001) (internal quotation marks and citations omitted). *See also* Fed. R. Civ. P. 9(g) ("Special Damages. If an item of special damage is claimed, it must be specifically stated.").

In sum, whether asserted as a claim for slander or libel, Plaintiff was required to specifically plead special harm/damages. Plaintiff's failure to allege the existence of such damages is therefore fatal to his defamation claims.

Specifically, Plaintiff nowhere alleges any type of special harm arising from any of the alleged verbal or written statements made with respect to him, let alone the "economic or pecuniary value" thereof. Plaintiff's bare and unsupported demand for "not less than twenty-million dollars" in compensatory and punitive damages (Amd. Compl. at ¶¶ 36, 39) is insufficient as a matter of law. *Nunez v. A-T Fin. Info. Inc.*, 957 F. Supp. 438, 441 (S.D.N.Y. 1997) ("To satisfy the special damages requirement," the plaintiff in a defamation case "must set forth an itemized account of her losses; round figures or a general allegation of a dollar amount as special damages will not suffice.") (*citing Boyle v. Stiefel Labs. Inc.*, 204 A.D.2d 872, 875, 612 N.Y.S.2d 469, 472 (N.Y. App. Div. 1994), *lv. to appeal denied* 84 N.Y.2d 803, 641 N.E.2d 158 (N.Y. 1994)).

If Plaintiff may claim that he asserts defamation *per se* based on an injury to his office, trade, business or profession,[3] thereby dispensing with the obligation to plead special harm, Plaintiff notably fails to allege what exactly his office, trade, business or profession may be. Plaintiff does not even allege that he was employed.[4]

---

[3] None of the other three categories listed above appears to be remotely applicable.

[4] Relevantly, in the underlying matrimonial proceedings, the trial court found the following with respect to Plaintiff's employment status and income in the time period leading up to the filing of this action:

> [The Plaintiff] is 33 years of age, Yeshiva educated, and in good health. *Although he claims that he is unemployed*, [he] did not respond to [Mrs. Masri's] discovery demands and trial subpoena, and has thus failed to comply with his financial disclosure obligations in this proceeding. While his 2015 tax return reflects a total income of only $3,813.00, credit card

The nearest assertion of any money-earning activity found in the Amended Complaint is at ¶20, where Plaintiff alleges that a certain "document falsely states that Plaintiff is an illegal car service driver." Amd. Compl. at ¶20; *see also* Ex. "A". However, Plaintiff does not allege that he runs a lawful "car service," or that he was even engaged in any trade, business or profession capable of being injured at the time he commenced this lawsuit. There is therefore no basis for Plaintiff to be relieved from pleading special harm in connection with his defamation claims.

Accordingly, even if all of the allegations in the Amended Complaint are taken as true, Plaintiff's second and third causes of action sounding in defamation, and alleging "slander and slander per se" and "libel and libel per se," respectively, must be dismissed.

### IV. BECAUSE MR. SAAL WAS ALLEGEDLY ONLY INVOLVED IN PUBLISHING CONTENT ON THE INTERNET THAT WAS AUTHORED BY OTHERS, PLAINTIFF'S DEFAMATION CLAIMS AGAINST HIM ARE BARRED BY THE COMMUNICATIONS DECENCY ACT.

Specific to Mr. Saal, federal statute precludes tort liability against persons hosting third-party content on an internet site, where the alleged liability is related to that content:

> Although a publisher of defamatory material authored by a third party is generally subject to tort liability, Congress has carved out an exception for Internet publication by enacting section 230 of the [Communications Decency Act, "CDA"]. . .. Section 230 establishes that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider" (47 USC § 230[c][1] ), and it preempts any state law—including imposition of tort liability—inconsistent with its protections (*see* 47 USC § 230[e][3]). A defendant is therefore immune from state law liability if (1) it is a "provider or user of an interactive computer service"; (2) the complaint seeks to hold the defendant liable as a "publisher or speaker"; and (3) the action is based on "information provided by another information content

---

statements and rental car records (obtained independently for trial by [Mrs. Masri]) evidence undisclosed financial resources and employment on [his] part.

Mahon Decl. at Ex. 3 (*Masri v. Masri*, 55 Misc. 3d 487, 488–89, 50 N.Y.S.3d 801, 803 (N.Y. Sup. Ct. 2017)) (emphasis added).

provider" (47 USC § 230[c][1]; *see also Federal Trade Commn. v. Accusearch Inc.*, 570 F.3d 1187, 1196 [10th Cir. 2009]; *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–1101 [9th Cir. 2009]; *Universal Communication Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418 [1st Cir. 2007]). The statute defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service" (47 USC § 230[f][3]).

*Shiamili v. Real Estate Grp. of New York, Inc.*, 17 N.Y.3d 281, 286–87, 952 N.E.2d 1011, 1015 (N.Y. 2011). *See also Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 273 (S.D.N.Y. 2016) (adopting the N.Y. Court of Appeals' legal framework as set forth in *Shiamili*).

In addition, the statute broadly defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. §230(f)(2). The definition encompasses individuals such as Mr. Saal. *Shiamili*, 17 N.Y.3d at 292, 952 N.E.2d at 1019.

The only specific allegations in the Amended Complaint naming Mr. Saal are that he "assisted in raising funds . . . through use of his website identified as ontimedatasolutions.com" and "assisted in the publication of the libel and libel per se content by allowing same to be posted on the said website." Amd. Compl. at ¶17. Thus, Mr. Saal qualifies as a "provider or user of an interactive computer service" subject to the protections of the CDA. Moreover, he is not alleged to have authored any of the allegedly defamatory or otherwise tortious content; rather, he is alleged only allowed the "use of" and "posting on" his website. He is therefore immune from state tort liability for any alleged role as a "publisher or speaker" of the allegedly defamatory or tortious content underlying much of the Amended Complaint. *See Shiamili*, 17 N.Y.3d at 292, 952 N.E.2d

at 1019 (administrator/host of website found immune under CDA from defamation liability for hosting content authored by third parties, even where the host engaged in editorial enhancement of the third-party content).

Accordingly, accepting all of the allegations in the Amended Complaint as true, Plaintiff's defamation claims against Mr. Saal are barred by federal statute and must be dismissed.

## V. PLAINTIFF'S EMOTIONAL DISTRESS-BASED CLAIMS FAIL TO ALLEGE ANY EXTREME AND OUTRAGEOUS CONDUCT AS A MATTER OF LAW

### A. The standard for stating an intentional infliction of emotional distress claim "is extremely difficult to satisfy."

This Court recently set out the complex standards governing an intentional infliction of emotional distress claim as follows:

> Under New York Law, to establish a cause of action for IIED [intentional infliction of emotional distress], a plaintiff must prove: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing severe emotional distress; (iii) a causal connection between the conduct and the injury; and (iv) severe emotional distress. The IIED tort provides a remedy for the damages that arise out of a defendant engaging in extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civil society. The standard for extreme and outrageous conduct is extremely difficult to satisfy. Indeed, the New York Court of Appeals has noted that every one of the IIED tort claims considered by the Court has failed because the alleged conduct was not sufficiently outrageous. Finally, as relevant here, although the New York Court of Appeals has not set forth detailed guidelines for when the tort may be available, it has cautioned that a claim for IIED may not be sustainable where the conduct complained of falls well within the ambit of other traditional tort liability.

*Deanda v. Hicks*, 137 F. Supp. 3d 543, 580–81 (S.D.N.Y. 2015) (dismissing IIED claim asserted in connection with alleged civil rights violations) (Karas, J.; internal quotation marks and citations omitted).

B. <u>Mr. Saal's alleged conduct is also immune from IIED tort liability, particularly given that the allegations against him patently fail to assert anything "extreme and outrageous."</u>

Initially, as noted at Point III.IV., *supra*, because Mr. Saal was only alleged to have allowed the "use of" and "posting on" his website in connection with Plaintiff's other allegations, his conduct remains (i) immune from tort liability under the CDA (47 U.S.C. §230); and (ii) cannot possibly be considered to "so transcend[] the bounds of decency as to be regarded as atrocious and intolerable in a civil society" as a matter of law. Plaintiff's remaining, emotional-distress-based claims against him must therefore be dismissed in their entirety.

C. <u>In their full context, Plaintiff's allegations against Mrs. Masri also fail to rise to the level of "extreme and outrageous" as a matter of law.</u>

As to Mrs. Masri, even if the *credible* allegations in the Amended Complaint are deemed to be true, they fail to establish any conduct "regarded as atrocious and intolerable in a civil society."

In addition to the standard of review on a 12(b)(6) motion to dismiss noted above, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Ashcroft v. Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950, 173 L. Ed. 2d 868.

Separate and apart from the allegations underlying Plaintiff's defamation claims, Plaintiff's IIED claims are based on further allegations that Mrs. Masri was involved in a plot seeking "to kidnap and/or kill" Plaintiff. Amd. Compl. at ¶41. More specifically, Plaintiff alleges that: Mrs. Masri "in Goshen, New York, met . . . with a member of the underworld, an ill reputed Israeli 'mafia' thug, named Ahron [sic] Goldberg . . . who was contracted for a hefty fee to travel from Israel to the United States for the purpose of kidnapping and/or murdering Plaintiff" (*id.* at ¶10); that "[d]uring the aforesaid meeting [Mrs.] Masri served as a translator between the Israeli

underworld thug, Goldberg, and Defendant Eric Thorsen" (*id.* at 11); and thereafter Mrs. Masri and others engaged in a fundraising campaign to pay for such kidnapping and murder (*id.* at ¶¶ 12-13) as well as in a leaflet campaign to convince the community "not [to] turn against them after ultimately learning that Plaintiff was kidnapped and murdered on the approval of defendants" (*id.* at ¶23).

Two deliberate and glaring factual omissions—of which this Court is permitted to take judicial notice—add crucial context undermining the credibility of these allegations.

First, as discussed above, Plaintiff failed to mention that Mrs. Masri had been his wife. Plaintiff further failed to mention that Mrs. Masri was represented by the Thorsen Co-Defendants in matrimonial proceedings against him in state court, which resulted, among other things, in Mrs. Masri being granted a judgment of divorce as well as child support against Plaintiff in the months leading up to the filing of this action.[5] Mahon Decl. at ¶¶ 11-12.

Second, Plaintiff did not name the Mr. Goldberg or "his accomplices" as defendants, despite the fact that they had been "apprehended by federal law enforcement" prior to the commencement of this action. Amd. Compl. at ¶13. The identity of one such accomplice, Shimen Liebowitz, was also publicized well in advance of this action,[6] meaning Plaintiff could readily have ascertained his identity and named him as a further defendant herein. Plaintiff's failure to

---

[5] It should also be reiterated that, as initially filed, the *only* named defendants were Mrs. Masri and her attorney. Mahon Decl. at ¶11.

[6] *See, e.g.*:
- U.S. Dept. of Justice, U.S. Attorney's Office, Southern District of New York, "Manhattan U.S. Attorney Announces Arrest Of Rabbi And Member Of Satmar Community For Conspiring To Kidnap And Murder; Goal of the Alleged Scheme Was to Obtain a Religious Divorce for the Victim's Wife," September 7, 2016, *available at* https://www.justice.gov/usao-sdny/pr/manhattan-us-attorney-announces-arrest-rabbi-and-member-satmar-community-conspiring.;
- New York Post, "Hitman told FBI about rabbi's plot to kill member of his sect," September 7, 2016, *available at* https://nypost.com/2016/09/07/hitman-told-feds-about-rabbis-plot-to-kill-member-of-his-sect/;
- CASE #: 1:16-cr-00629-SHS-1 (*USA v. Goldberg, et al.*; docket for defendant Goldberg) *and* CASE #: 1:16-cr-00629-SHS-2 (docket for defendant Liebowitz).

bring any civil claims against these two individuals, who also pled guilty to felonies related to the alleged kidnapping plot (Mahon. Decl. at ¶13), undermines any allegations that the alleged plot genuinely underlies this action. Rather, Plaintiff's omission of those individuals underscores that this lawsuit was commenced in retaliation against Mrs. Masri and her attorney, rather than to recover for any sincere emotional distress allegedly caused by said plot.

Viewed in the foregoing context, Plaintiff's vague allegations of Mrs. Masri's (and her attorney's) involvement in in a plot against Plaintiff should not be credited with any presumption of truth, even at this early stage of the litigation.

All that said, Plaintiff nevertheless fails to specifically assert that Mrs. Masri (or her attorney on her behalf) engaged in any unlawful conduct designed to harm him. Rather, as the quoted language allegedly from Mr. Thorsen indicates, Mrs. Masri was "raising funds for a lawyer" and seeking help from the community. Amd. Compl. at ¶14. With regard to the alleged meeting among Mrs. Masri, her attorney, and Mr. Goldberg (*id.* at ¶10), Plaintiff notably fails to allege the purpose of that meeting. Rather, he passively alleges that Mr. Goldberg "was contracted for a hefty fee to . . . for the purpose of kidnapping and/or or murdering Plaintiff" (*id.* at ¶11), but fails to allege *who* contracted with him. Certainly, he does not allege that any defendant herein contracted with Mr. Goldberg. Moreover, he also fails to allege that Mrs. Masri or any other defendant paid Mr. Goldberg or his accomplices.

In sum, in the context of Plaintiff's obvious retaliatory motivation for filing this action, as well as Plaintiff's failure to specifically tie Mrs. Masri or any other defendant to the events that allegedly caused him emotional distress, Plaintiff's claims are pure, self-serving speculation.

Accordingly, this honorable Court should not treat as true Plaintiff's allegations of defendants' involvement in the purportedly underlying plot or any emotional distress based

thereon; hold that Plaintiff failed to allege the existence of any extreme and outrageous conduct by the defendants; and dismiss Plaintiff's fifth and sixth causes of action with prejudice.

### VI. AS ALLEGED, THE STATE LAW CLAIMS AGAINST DEFENDANT SAAL ARE BARRED BY THE APPLICABLE ONE-YEAR STATUTE OF LIMITATIONS FOR INTENTIONAL TORTS.

As an alternative basis for dismissal particular to Mr. Saal, Plaintiff's intentional tort claims (second through fifth causes of action) are barred by the applicable statute of limitations.

A statute of limitations defense may be "raise[d] ... in a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ceara v. Deacon*, 68 F. Supp. 3d 402, 406 (S.D.N.Y. 2014) (Karas, J.) (*quoting Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)). New York applies a one-year statute of limitations for defamation claims, accruing on the date of first publication, including publication on a website. *Van Buskirk v The New York Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003); N.Y. C.P.L.R. §215(3). A one-year statute of limitations also applies to intentional infliction of emotional distress claims. *Estreicher v. Oner*, 148 A.D.3d 867, 868, 49 N.Y.S.3d 530, 532 (N.Y. App. Div. 2017).

Here, Plaintiff alleges that Mr. Saal assisted the other defendants "in raising funds for the kidnapping and murder of Plaintiff through use of his website" and "additionally assisted in the publication of the libel and libel per se content by allowing same to be posted on the said website." Amd. Compl. at ¶17. Plaintiff alleges that this "direct fund-raising campaign" and publication of said allegedly defamatory content occurred "on or about May 11, 2016." *Id.* at ¶16. Assuming this to be true, the one-year statute of limitations expired as to these publications and related actions on May 11, 2017. However, Mr. Saal was not added as a party to this matter until Plaintiff filed his Amended Complaint on October 27, 2017 (Mahon Decl. at ¶5), well after the one-year statute

of limitations expired for both the defamation and intentional infliction of emotional distress claims (and any other intentional tort claims).

Plaintiff's claims against Mr. Saal are therefore barred by the applicable statute of limitations and must be dismissed.

### VII. IN THE ALTERNATIVE, PLAINTIFF'S STATE-LAW CLAIMS SHOULD NOT BE HEARD IN THIS FORUM

Finally, in the event that this Court dismisses Plaintiff's first and only cause of action arising under federal law, but declines to dismiss one or more of Plaintiff's state-law claims, this Court should decline to exercise supplemental jurisdiction over those pendent state-law claims.

"The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction...." 28 U.S.C. §1367(c)(3). Dismissal of state-law claims without prejudice is appropriate where those claims were only in a federal forum in connection with the assertion of a federal civil rights claim. *Matican v. City of New York*, 524 F.3d 151, 159 (2d Cir. 2008); *LaForgia v. Hoch*, *supra* at *7 (S.D.N.Y. Sept. 28, 2018); *Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 322 (S.D.N.Y. 2014). There would be no substantial prejudice to the Plaintiff of such a dismissal, given that he would be permitted to reassert the non-time-barred claims in state court. N.Y. C.P.L.R. §205(a); *Jordan v. Bates Advert. Holdings, Inc.*, 292 A.D.2d 205, 206, 738 N.Y.S.2d 348, 349 (N.Y. App. Div. 2002).

That said, given the baselessness of Plaintiff's claims and improper, retaliatory motivation for bringing this action, the Court should nevertheless dismiss all of Plaintiff's claims with prejudice, and deny him any request to further amend his pleading, in order to preclude him from

continuing to and continue waste valuable judicial resources[7] to harass Mrs. Masri and her supporters here or in state court.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, it is respectfully requested that this honorable Court issue an order dismissing the Amended Complaint in its entirety with prejudice; or, in the alternative, dismissing the federal law claims with prejudice and declining to exercise supplemental jurisdiction over any remaining state law claims.

Dated: Newburgh, New York
      July 19, 2019

_____
RICHARD M. MAHON, II

---

[7] It should be observed that Plaintiff had another baseless, *pro se* federal civil rights lawsuit pending in this Court until very recently, *Masri v. New York Presbyterian Hospital et al.*, 1:17-cv-08356-AT-KHP. That action was fully dismissed on June 6, 2019.