UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH H. MASRI,

                            Plaintiff,

            v.

ERIC O. THORSEN, *et al.*,

                            Defendants.

No. 17-CV-4094 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Joseph H. Masri
Brooklyn, NY
*Pro se Plaintiff*

Andrew S. Kowlowitz, Esq.
Shari D. Sckolnick, Esq.
Furman, Kornfeld & Brennan LLP
New York, NY and Elmsford, NY
*Counsel for Defendants Eric O. Thorsen and Thorsen Law Offices*

Richard M. Mahon, Esq.
Michael R. Frascarelli, Esq.
Catania, Mahon, Milligram & Rider, PLLC
Newburgh, NY
*Counsel for Defendants Esther R. Masri and Zion Saal*

KENNETH M. KARAS, United States District Judge:

        Pro se Plaintiff Joseph H. Masri ("Plaintiff") brings this Action, pursuant to 42 U.S.C.

§ 1985(3) and New York State law, against Eric O. Thorsen ("Thorsen"), Thorsen Law Offices

("Thorsen Law"), Esther R. Masri ("Mrs. Masri"), and Zion Saal ("Saal"; collectively,

"Defendants").[1]  Plaintiff alleges that Defendants conspired to deprive Plaintiff of constitutional

---

[1] Although Plaintiff and counsel for Thorsen and Thorsen Law refer to Defendant Saal as
"Sall," Saal's own counsel refers to him as "Saal" throughout his Memorandum of Law and
Declaration.  Thus, the Court uses this spelling of this Defendant's name herein and respectfully
requests that the Clerk of the Court update the spelling of Defendant Saal's name on the docket.

rights, and that they committed slander, slander per se, libel, libel per se, and intentional infliction of emotional distress ("IIED"). (*See generally* Am. Compl. (Dkt. No. 9).)

Before the Court are the Motions To Dismiss of Thorsen and Thorsen Law (the "Thorsen Motion") and of Mrs. Masri and Saal (the "Masri Motion"; with the Thorsen Motion, the "Motions"). (Not. of Masri Mot.; Not. of Thorsen Mot. (Dkt. Nos. 29, 35).) For the following reasons, the Motions are granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and the exhibits attached to it, (Am. Compl.), as well as a Memorandum submitted by Plaintiff on December 2, 2019, which the Court construes liberally as a partial Opposition to the instant Motions, (Pl.'s Mot. for Extension of Time to File Second Am. Compl. and Mem. of Law in Supp. ("Pl.'s Mem.") (Dkt. No. 49)).[2] The Court also considers documents attached to that Opposition, to the extent they are consistent with the allegations in Plaintiff's Amended Complaint.[3]

---

[2] To the extent Plaintiff raises additional claims in documents outside of the Amended Complaint, the Court does not consider them here. *See Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *5 n.8 (E.D.N.Y. Dec. 15, 2010) (finding that certain of a pro se plaintiff's claims failed because those claims were not raised in the amended complaint).

[3] Both sets of Defendants submitted Declarations along with their Motions, attaching various documents. (*See* Decl. of Richard M. Mahon, II, Esq. in Supp. of Masri Mot. ("Mahon Decl."); Decl. of Shari Sckolnick, Esq. in Supp. of Thorsen Mot. ("Sckolnick Decl.") (Dkt. Nos. 30, 35-1).) The Court will not consider such documents on a motion to dismiss. *See Alston v. 1749-1753 First Ave. Garage Corp.*, No. 12-CV-2676, 2013 WL 3340484, at *3 (E.D.N.Y. July 2, 2013) ("It is . . . improper for a court to consider declarations and affidavits on a motion to dismiss." (citation and quotation marks omitted) (collecting cases)). However, the Court may take judicial notice of certain documents attached to these Declarations to the extent they are relevant to the instant Motions, and the Court notes where it does so.

Additionally, to the extent that Defendants assert facts in their Memoranda that Plaintiff has not alleged, the Court does not consider these facts here. *See Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000) ("[A] district court errs when it . . . relies on factual allegations

Plaintiff is a member of "Ultra- Orthodox Judaism" and follows the "teachings of the late

Rabbi Tzvi Dov Abraham o.b.m." (Am. Compl. ¶ 8.) Plaintiff and Mrs. Masri were married and

have been involved in numerous "contested matrimonial" proceedings in New York State court.

(Pl.'s Mem. Ex. A ("Case Details") (Dkt. No. 19).)[4] According to Plaintiff, Mrs. Masri paid

"and/or" retained Thorsen and Thorsen Law to help her "publicly slander[]" Plaintiff. (Am.

Compl. ¶ 9.)

---

contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss." (citations
omitted)).
    Finally, any assertions by Defendants that the Court "should not treat as true Plaintiff's
allegations" or that "Plaintiff's vague allegations . . . should not be credited with any
presumption of truth, even at this early stage of the litigation," (Mem. of Law in Supp. of Masri
Mot. ("Masri Mem.") 12 (Dkt. No. 31)), are plainly improper on a motion to dismiss, where the
Court *must* "accept as true all of the factual allegations contained in the complaint," *Erickson v.
Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted), and *must* "draw[] all reasonable
inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304
n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

    [4] Defendants have submitted certain decisions and orders from these proceedings. (*See*
Sckolnick Decl. Exs. B–E (Dkt. Nos. 35-3–35-6).) On January 13, 2017, the New York Supreme
Court, Orange County, found that Mrs. Masri "pleaded and prove[d] a cause of action for
divorce." *Masri v. Masri*, 50 N.Y.S.3d 801, 803 (Sup. Ct. 2017) (citation omitted). On March 1,
2017, the New York Supreme Court, Orange County, entered a judgment of divorce between
Plaintiff and Mrs. Masri, who was represented by Thorsen in the proceedings. (Sckolnick Decl.
Ex. E ("Mar. 1, 2017 Judgment").) On April 24, 2019, the Appellate Division, Second
Department affirmed a family court order giving Mrs. Masri sole custody of the couple's two
children. *See generally In re Masri v. Masri*, 99 N.Y.S.3d 61 (App. Div. 2019).
    While the Court may take judicial notice of state court judgments on a motion to dismiss,
it may not consider them for the truth of the matters asserted therein such as, for example, the
religion of Mrs. Masri. (*See* Mahon Decl. ¶ 11(a) ("[T]his Court should take notice of the . . .
judicially-reported fact[] . . . [that] [b]oth [Mrs. Masri and Plaintiff] are Orthodox Jews.").) *See
Johnson v. Pugh*, No. 11-CV-385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) ("A court
may take judicial notice of matters of public record, including . . . decisions in prior state court
adjudications, on a motion pursuant to Rule 12(b)(6)." (citation omitted)); *Piazza v. Fla. Union
Free Sch. Dist.*, 777 F. Supp. 2d 669, 678 (S.D.N.Y. 2011) (noting that the court may take notice
of state court decisions "to determine what statements [the documents] contain[,] not for the truth
of the matters asserted" (some alterations and all quotation marks omitted) (quoting *Kramer v.
Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991))).

"[S]ome weeks" prior to May 29, 2016, Mrs. Masri and Thorsen, who was "acting individually and on behalf of [Thorsen Law]," met with Ahron Goldberg ("Goldberg") an "ill[-]reputed Israeli mafia thug" who was a "member of the underworld," (*id.* ¶ 10 (quotation marks omitted)), in Goshen, New York. (*Id.*) Goldberg resided in Israel and traveled to the United States after being contracted "for a hefty fee" to kidnap "and/or" murder Plaintiff. (*Id.*) During the meeting, Mrs. Masri served as a translator between Goldberg and Thorsen. (*Id.* ¶ 11.) Defendants also began a "public campaign" to raise the outstanding amount owed to Goldberg and his "accomplices" for the kidnapping and/or murder of Plaintiff. (*Id.* ¶ 12.)

On or about May 11, 2016, Defendants initiated a "direct [fundraising] campaign filled with libelous per se statements as well as life threatening content directed against Plaintiff," which was published online in order to raise money to pay Goldberg. (*Id.* ¶ 16.) Saal assisted in raising these funds through his website, titled "ontimedatasolutions.com." (*Id.* ¶ 17.) Saal also allowed "libel and libel per se content" to be published on his website, (*id.*), including the following statement, which was written in Yiddish:

> He drives around here with his black SUV and makes illegal car service trips, which lead[] unfortunately to forbidden acts (an inference to sexual perversion and/or molestation)[.] Heaven have [m]ercy (on the riders he transports)[.] And here is not the place to describe (those acts committed) in detail (inferring that a written description of [Plaintiff's] sexual perversion would be found offensive within the community)[.] . . . []Dear members of Judaism, will we be able to loudly proclaim that our hands did not spill this blood (murder this person)?

(*Id.* Ex. A ("Website Translation") (Dkt. No. 9).)[5] Plaintiff claims that readers were intended to infer from the statement that Plaintiff was involved in "dangerously perverted sexual

---

[5] The parentheticals are not part of the language that was actually translated but instead were provided by the translator to explain "clear inferences" of "many idioms . . . in order to properly bring out the intended meaning as best as possible." (Website Translation.)

Thorsen and Thorsen Law dispute that the Court should consider the translation submitted by Plaintiff, arguing that it is an "uncertified partial translation" and that Plaintiff did

misconduct" and that he is a "dangerous sexual predator." (*Id.* ¶¶ 20–21.) According to Plaintiff, the "fundraising campaign" remains "ongoing and continuous." (*Id.* ¶ 19.)

Also on or about May 11, 2016, Mrs. Masri initiated a "libelous paper leaflet campaign," known as a "pashkeville." (*Id.* ¶ 22.) According to Plaintiff, these leaflets, which included the statement from Saal's website, were distributed in Kiryas Joel, New York; Monroe, New York; and Williamsburg, Brooklyn. (*Id.*) The leaflets were also posted on the walls of synagogues in these locations. (*Id.*)

On or about May 19, 2016, Thorsen, "acting individually and on behalf of [Thorsen Law] and . . . [Mrs. Masri]" publicly slandered Plaintiff at the Keren V'Yoel Moshe Hall in Monroe, New York. (*Id.* ¶ 7.) Thorsen did so "with maliciousness and . . . vehement animus directed at Plaintiff over his ultra-orthodox religious beliefs and practices." (*Id.*) Over 300 people watched Thorsen's address. (*Id.* ¶ 14.) According to Plaintiff, Thorsen stated the following:

> [Plaintiff,] who I think by the way, I don't know if anyone here knows him[.] We're talking about someone who had to pay child support for ten years, who had to pay spousal support for ten years[,] who for ten years basically has avoided seeing his children, then complains bitterly that he doesn't see his children. He's not a nice man[.] I would say he is a bad man. He's a bad father[.] He is a bad Jew[,] frankly, he really is[.] He is an embarrassment to your community.
>
> There are limits of what I can do in a [c]ourt room[.] What I'm here to do is to ask for your help in getting Mrs. Masri free from this man, whether it takes money, whether it takes the community turning it[s] back on [Plaintiff,] whether it

not attach the original publication to his Amended Complaint. (*See* Thorsen Mem. 15 n.3.) However, the translation does appear to be certified, as it is notarized and signed by the translator, who "affirm[s]" that he is "fluent in the languages of English, Hebrew, and Yiddish, and [is] fully capable of translating properly from Hebrew and Yiddish to the English language." (Website Translation.) The translator also "affirm[s]" that his translation is "true [and] thorough." (*Id.*) *Cf. Quiroga v. Fall River Music, Inc.*, No. 93-CV-3914, 1998 WL 851574, at *2 n.3 (S.D.N.Y. Dec. 7, 1998) ("Translations of foreign-language documents which are not certified as true and accurate translations and which do not even identify the translator are not properly authenticated and are not admissible evidence."). Thus, the Court properly considers the translation here, as a document appended to and incorporated by reference in Plaintiff's Amended Complaint.

takes the community refusing to hire [Plaintiff], deal with [Plaintiff], speak with [Plaintiff], house [Plaintiff]; [we've] got to get him to the point where he understands that he is not alone in this world and that he has no choice but to act like a human being, act like a good father, act like a devoted Jew.

You all have to help me[.] We not [sic] activism on the part of the community to make this issue go away. Apparently, [Plaintiff] is incapable of seeing when enough is enough. I think this is a housekeeping matter for this community. I would urge you to deal with it financially, vocally, . . . anything you can do. Let [Plaintiff] know you're not going to support him unless it is done.

The community must do something to rectify the problem[.] [R]aising funds for a lawyer, raising for the fight is only one part of the solution. The rest of the part of the solution is community pressure. [B]ut it['s] really up to you in terms of how you present, and how you react to the situation, and how much support you have given[.] [A]nd it really is.

(*Id.* (ellipses omitted).) Plaintiff alleges that Defendants made these "intentional[] false[] and public[]" statements to impede Plaintiff's ability to earn a living and to "incite others to physically injure and/or support . . . injuring of Plaintiff." (*Id.* ¶ 15.) Plaintiff alleges that this act "directly cause[d] severe permanent damage to [his] good reputation" and "severe temporary and permanent emotional harm, trauma, and suffering." (*Id.* ¶ 7.)

According to Plaintiff, in addition to promulgating "false negative publicity . . . against Plaintiff and his ultra-religious beliefs," Defendants "hoped that . . . the members of the Williamsburg, Brooklyn and Kiryas Joel communities would hear their slander and read their libelous 'pashkevilles' against Plaintiff and [would] carry the same animosity as . . . [D]efendants toward Plaintiff for . . . his extreme ultra-religious beliefs." (*Id.* ¶ 23.) Defendants also hoped that these communities would not turn against them after they learned that Plaintiff was kidnapped and murdered with Defendants' approval. (*Id.*) However, during the summer of 2016, after Defendants had raised the funds necessary to pay Goldberg and his accomplices, federal law enforcement apprehended Goldberg and two others after they had transferred

approximately $62,000 to a "third-party informant" who was "unwittingly subcontracted to [kidnap and/or murder] Plaintiff." (*Id.* ¶ 13.)[6]

Plaintiff generally alleges throughout his Amended Complaint that Defendants acted with "intensive animus and discrimination toward Plaintiff, due to their disapproval of him for his religious beliefs," (*id.* ¶ 24), fostered "intensive hate toward Plaintiff over the practice of his religious beliefs," (*id.* ¶ 25), and, "as a direct result of their intensive hate toward Plaintiff over the practice of his religious beliefs," sought to deprive Plaintiff of his constitutional rights, (*id.* ¶ 26). He also alleges that all of the "intentional and malicious acts" described in the Amended Complaint are "continuous and currently on[going]." (*Id.* ¶ 28.)

According to Plaintiff, Defendants' actions "imped[ed] . . . his ability to obtain appropriate employment [and] legal counsel" and affected his ability to safely walk in New York and Kiryas Joel "without fear of being physically attacked, kidnapped[,] and/or murdered." (*Id.* ¶ 26.) Part of the reason Plaintiff struggles to safely get around Kiryas Joel is because Defendants "employed state and [Kiryas Joel] local police" to protect Thorsen while he spoke against Plaintiff, presumably on May 19, 2016, which caused Plaintiff to believe that he has "no source of protection" if he is attacked in this town. (*Id.* ¶ 29.) As a result of Defendants' actions,

---

[6] In his Opposition, Plaintiff appears to allege that "Shimen Liebowitz" ("Liebowitz") was also "incited" by Mrs. Masri to kidnap and/or murder Plaintiff "in order to obtain a [r]eligious 'get' and/or to be widowed from her marriage to Plaintiff." (Pl.'s Mem. 2 (emphasis omitted).) The Court may also take judicial notice of the fact of the publication of an article that is related to a criminal case against these individuals. (*See* Mahon Decl. Ex. 5 ("Sept. 7, 2016 Arrest Article") (Dkt. No. 30-5).) *See In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 383 n.3 (S.D.N.Y. 2003) (taking judicial notice, on a motion to dismiss, of newspaper articles for the fact of their publication), *aff'd*, 396 F.3d 161 (2d Cir. 2005). To the extent Defendants implore the Court to make inferences against Plaintiff based on this article, the Court may not—and does not—do so. (*See* Masri Mem. 11–12 ("Plaintiff's failure to bring any civil claims against [Goldberg and Liebowitz] . . . undermines any allegations that the alleged plot genuinely underlies this [A]ction.").)

Plaintiff also suffers from "temporary and permanent extreme emotional pain and suffering." (*Id.* ¶ 27.)

Plaintiff seeks at least $20,000,000 in compensatory and punitive damages against Defendants, (*id.* ¶¶ 33, 36, 39, 42, 44), and also asks that the Court issue a declaratory judgment recommending that the Appellate Division, Second Department issue "an immediate order" that permanently disbars Thorsen from the practice of law, (*id.* ¶ 46).[7]

B.  Procedural Background

Plaintiff filed his original Complaint against Mrs. Masri, Thorsen, and Thorsen Law on May 19, 2017, alleging violations of § 1983, § 1985(3), and New York State law in the Eastern District of New York.  (*See generally* Compl. (Dkt. No. 1).)  On May 31, 2017, the case was transferred to the Southern District of New York.  (Dkt. Nos. 4–5.)  On June 20, 2017, the court granted Plaintiff's request to proceed in forma pauperis ("IFP").  (Dkt. No. 6.)  On July 14, 2017, the court issued an Order to Amend, dismissing Plaintiff's claims under § 1983, given that Mrs. Masri, Thorsen, and Thorsen Law are private parties, and directing Plaintiff to amend his claim under § 1985(3).  (Order to Amend 2–3 (Dkt. No. 7).)  The court directed Plaintiff to assert in his Amended Complaint "(1) any injuries or deprivations he has suffered as a result of the alleged conspiracy, (2) whether the conspiracy's purpose was to deprive him of equal protection of the law, (3) and whether the conspiracy was motivated by 'discriminatory animus.'"  (*Id.* at 3.)

On October 27, 2017, Plaintiff filed his Amended Complaint, adding Saal as a Defendant and asserting claims under § 1985 and New York State law.  (*See generally* Am. Compl.)  On

---

[7] Although Plaintiff styles this requested relief as his "sixth cause of action," the Court construes Plaintiff's request for a declaratory judgment not as a stand-alone claim, but instead as a remedy that he seeks.  Given that the Court grants Defendants' Motions, it does not further consider this requested relief herein.  (*See* Thorsen Mem. 17–18 (arguing that the Court should dismiss this "cause of action").)

April 3, 2019, the Action was reassigned to this Court, (Dkt. (entry for Apr. 3, 2019)), and the Court directed the Clerk of Court to issue a summons and deliver to the U.S. Marshals Service the requisite paperwork for the Marshals Service to effect service on Defendants, (Dkt. No. 11). On April 14, 2019, counsel for Saal filed a Pre-Motion Letter for an anticipated motion to dismiss, (Dkt. No. 18), and the Court set a briefing schedule, (Dkt. No. 22). Counsel for Thorsen and Thorsen Law filed a separate Pre-Motion Letter seeking to file a motion to dismiss on June 10, 2019, (Dkt. No. 24), for which the Court also set a briefing schedule, (Dkt. No. 28).

On July 19, 2019, Mrs. Masri and Saal filed their Motion To Dismiss. (Not. of Masri Mot.; Mahon Decl.; Masri Mem.) On July 25, 2019, Thorsen and Thorsen Law filed their Motion To Dismiss. (Not. of Thorsen Mot.; Sckolnick Decl.; Mem. of Law in Supp. of Thorsen Mot. ("Thorsen Mem.") (Dkt. No. 35-7).) On August 26, 2019, Plaintiff filed a Letter "seeking permission to cross move for a [R]ule 15 [M]otion . . . to amend the [C]omplaint." (Dkt. No. 36.) Defendants opposed Plaintiff's request, (Dkt. Nos. 37–38), but the Court gave Plaintiff leave to amend by October 5, 2019, and indicated that it would be Plaintiff's last chance to amend, and no extensions would be granted, (Dkt. No. 39). The Court also instructed Defendants to supplement their Motions within 20 days of the filing of Plaintiff's Second Amended Complaint ("SAC"), Plaintiff to respond 30 days after Defendants filed supplements, and Defendants to file any replies two weeks thereafter. (Dkt. No. 40.)

On September 18, 2019, the Court responded to another Letter from Plaintiff, instructing Plaintiff to file his SAC by October 18, 2019. (Dkt. No. 42.) However, on October 20, 2019, Plaintiff filed a Letter requesting a 60-day extension due to the "Jewish [h]igh holidays," and the fact that he did not receive the Court's deadline for his SAC until September 22, 2019. (Dkt. No. 43.) Defendants opposed Plaintiff's request, (Dkt. Nos. 44, 46), and the Court gave Plaintiff

until November 15, 2019 to file his SAC, (Dkt. No. 45). As of November 20, 2019, Plaintiff had

not filed an SAC, and the Court deemed the Motions fully submitted. (Dkt. No. 48.) However,

on December 2, 2019, Plaintiff filed a 48-page "Motion for Extension of Time to File his [SAC]"

by December 23, 2019, stating that he planned to add Mrs. Masri's father as a Defendant, as well

as certain claims under the Racketeering Influenced and Corrupt Organization Act ("RICO") and

§§ 1985 and 1986. (Dkt. No. 49.) The Court denied Plaintiff's request, and informed Plaintiff

that his SAC must be filed by December 9, 2019. (Dkt. No. 50.) However, in this document,

Plaintiff also raised certain arguments against Defendants' Pre-Motion Letters and Motions.

(*See generally* Pl.'s Mem.) Given Plaintiff's pro se status, the Court will construe this

submission as Plaintiff's Opposition to Defendants' Motions.

    As of January 6, 2020, Plaintiff had not filed an SAC. Thus, the Court again deemed

Defendants' Motions fully submitted. (Dkt. No. 52.)

## II. Discussion

### A. Standard of Review

    The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation

marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motions, the Court is required to "accept as true all of the factual allegations contained in the [Amended] [C]omplaint." *Erickson*, 551 U.S. at 94 (2007); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *T & M Prot. Res., Inc.*, 992 F. Supp. 2d at 304 n.1 (citing *Koch*, 699 F.3d at 145). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v.*

*Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu*, 2010 WL 5186839, at *4 n.6 (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents either in [the] plaintiff[']s possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted).

B. Analysis

1. Section 1985 Conspiracy

Defendants argue that Plaintiff fails to state a conspiracy claim under § 1985(3) because he has insufficiently alleged that Defendants operated with discriminatory animus and that the purpose of the alleged conspiracy was to interfere with his protected rights. (Thorsen Mem. 8–10; Masri Mem. 3–4.)

To establish a conspiracy claim under § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is deprived of any right of a citizen of the United States." *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 341 (2d Cir. 1999) (citation, alterations, and quotation marks omitted). Moreover, "to reach a purely *private* conspiracy under [§ 1985(3)], a plaintiff must [also] show . . . that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Poles v. Brooklyn Cmty. Hous. & Servs.*, No. 10-CV-1733, 2010 WL 1992544, at *2 (E.D.N.Y. May 14, 2010) (emphasis in original) (quotation marks omitted) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993)). To state such a claim, a plaintiff must also make "a showing of class-based invidiously discriminatory animus" on the part of the conspiring parties, *Hickey v. City of New York*, No. 01-CV-6506, 2004 WL 2724079, at *22 (S.D.N.Y. Nov. 29, 2004) (citation omitted), *aff'd*, 173 F. App'x 893 (2d Cir. 2006), as well as provide "some factual basis supporting a meeting of the minds, such that [the] defendants entered into an agreement, express or tacit, to achieve the unlawful end," *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (citation and quotation marks omitted). The Second Circuit has "defined 'class-based animus' to include discrimination based on religion." *Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of N.Y., Inc.*, 968 F.2d 286, 291 (2d Cir. 1992) (collecting cases). "Claims of conspiracy that are vague and provide no basis in fact must be dismissed." *Germain v. M & T Bank Corp.*, 111 F. Supp. 3d 506, 540 (S.D.N.Y. 2015) (citation, alteration, and quotation marks omitted).

Even construing the Amended Complaint liberally, Plaintiff fails to establish that Defendants acted with "class-based invidiously discriminatory animus," under § 1985(3),

13

*Hickey*, 2004 WL 2724079, at *22 (citation omitted), because his allegations related to discriminatory animus are conclusory. For example, Plaintiff states that Defendants acted "with vehement animus . . . over [Plaintiff's] ultra-orthodox religious beliefs and practices," (Am. Compl. ¶ 7), propagated "false negative publicity . . . against Plaintiff and his ultra-religious beliefs," (*id.* ¶ 23), and sought to deprive Plaintiff of his Constitutional rights "as a direct result of their intensive hate . . . over the practice of his religious beliefs," (*id.* ¶ 26). However, the "mere assertion of [discriminatory] motivation is not sufficient to state a claim under § 1985," *Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*, No. 98-CV-2416, 2002 WL 13222, at *3 (E.D.N.Y. Jan. 3, 2002) (citation omitted), and "fact-specific allegations of a causal link between . . . [D]efendant[s'] actions and . . . [P]laintiff's [religion] are required," *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 296 (S.D.N.Y. 2011) (citation, alteration, and quotation marks omitted); *see also Temple of the Lost Sheep Inc. v. Abrams*, 930 F.2d 178, 184–85 (2d Cir. 1991) (affirming the district court's dismissal of claims under § 1985(3) because although the plaintiff alleged a conspiracy to publish libelous articles, any allegations of discriminatory animus were conclusory); *Vidurek v. Koskinen*, No. 17-CV-9064, 2018 WL 3597644, at *12 (S.D.N.Y. July 25, 2018) (finding that the plaintiffs "ple[d] no facts whatsoever in support of their bald assertions of animus on the basis of [a political] affiliation" (citation omitted)), *aff'd*, 789 F. App'x 889 (2d Cir. 2019).

Indeed, courts in the Second Circuit have found that discriminatory animus is adequately alleged when particularized facts are pled. *See Colombrito v. Kelly*, 764 F.2d 122, 130–31 (2d Cir. 1985) (finding that an attempt by parents to "deprogram" their son through a process that would force him to renounce his religious beliefs demonstrated "anti-religious animus"); *Zhang Jingrong v. Chinese Anti-Cult World All.*, 287 F. Supp. 3d 290, 299 (E.D.N.Y. 2018) (finding

that the plaintiffs sufficiently alleged discriminatory animus when the complaint detailed, inter alia, verbal attacks and written materials threatening "eradication" and "violent suppression" of the plaintiffs' religious group); *Tchatat v. City of New York*, No. 14-CV-2385, 2015 WL 5091197, at *12 (S.D.N.Y. Aug. 28, 2015) (finding that discriminatory animus was adequately pled against certain defendants on the basis of an alleged conspirator's use of a racial slur), *reconsidered on other grounds by* 2019 WL 6159320 (S.D.N.Y. Oct. 20, 2015); *Germain*, 111 F. Supp. 3d at 517, 541 (dismissing a claim under § 1985(3) claim on other grounds, but noting that discriminatory animus was properly pled when the defendant corporation's employees had, inter alia, "express[ed] anti-Muslim sentiment"). Here, by contrast, Plaintiff merely states in various iterations that Defendants acted "with vehement animus . . . over [Plaintiff's] ultra-orthodox religious beliefs and practices." (Am. Compl. ¶ 7.) He does not allege, for example, that Defendants made any anti-Semitic remarks, either verbally or in publications that they distributed, that they took any hostile actions explicitly directed toward Plaintiff's religion, or that they treated others who practiced Plaintiff's religion similarly.[8] Thus, Plaintiff's claims under § 1985(3) must be dismissed.

---

[8] Plaintiff does allege that during his "public procla[mation]," Thorsen made two references to Plaintiff's religion. For example, Thorsen stated that Plaintiff was "not a nice man" and that he was "a bad man[,] . . . a bad father[,] . . . [and] a bad Jew." (Am. Compl. ¶ 14.) Thorsen also allegedly instructed the audience, "We['ve] got to get [Plaintiff] to the point where he understands that he is alone in this world and that he has no choice but to act like a human being, act like a good father, act like a devoted Jew[.]" (*Id.*) Even drawing all reasonable inferences in favor of Plaintiff, the Court cannot infer from these statements that Defendants acted with discriminatory animus because the statements do not appear to be "directed at Plaintiff[] . . . because of [his] religion," *Jingrong*, 287 F. Supp. 3d at 301 (citation omitted). Instead, Thorsen appears to refer to Plaintiff's religion in the context of explaining that he has "had to pay child [and spousal] support for ten years" and has "avoided seeing his children." (*Id.*) Additionally, there is no reference to Plaintiff's religion in the statement allegedly posted on Saal's website, which instead alludes to the religion of the website's readers. (*See* Website Translation ("Dear . . . members of Judaism, will we be able to loudly proclaim that our hands did not spill this blood . . .?").)

Additionally, Defendants argue that Plaintiff fails to allege that the conspiracy was aimed at interfering with any constitutional rights, beyond the conclusory statement that Defendants sought to "deprive Plaintiff of his rights guaranteed under the United States and State of New York Constitutions." (Am. Compl. ¶ 26; *see* Thorsen Mem. 10.) Defendants also argue that the deprivations alleged by Plaintiff are insufficient to state such a claim. (*Id.*)

"To allege a [§] 1985(3) conspiracy, a complaint . . . must set forth facts showing some intentional and purposeful deprivation of constitutional rights." *Murphy v. City of Stamford*, No. 13-CV-942, 2013 WL 5776903, at *8 (D. Conn. Oct. 25, 2013) (alteration and quotation marks omitted) (quoting *Powell v. Workmen's Comp. Bd. of State of N.Y.*, 327 F.2d 131, 137 (1964)), *aff'd in part, appeal dismissed in part*, 634 F. App'x 804 (2d Cir. 2015). Further, "[t]he right must be 'aimed at'; its impairment must be a conscious objective of the enterprise." *Jingrong*, 287 F. Supp. 3d at 297–98 (some quotation marks omitted) (quoting *Bray*, 506 U.S. at 275). "In other words, a defendant must do more than merely be aware of a deprivation of the right that he causes, and more than merely accept it; he must act at least in part for the very purpose of producing it." *Id.* at 298 (quotation marks omitted) (quoting *Bray*, 506 U.S. at 276).

Plaintiff alleges that Defendants sought to "cause severe permanent damage to [his] good reputation," "impede Plaintiff's ability to earn a living," and cause "severe temporary and permanent emotional harm, trauma, and suffering." (Am. Compl. ¶¶ 7, 15.) Plaintiff also claims that Defendants' actions impeded his ability to obtain legal counsel. (*Id.* ¶ 26.)[9] However, none of these alleged "purposes" of the conspiracy is actionable under § 1985(3). *See Mazer v. United*

---

[9] Plaintiff states in his Opposition that Defendants also "interfered with [Plaintiff's] familial relations with his children" and "interfered with [his] Orthodox [r]eligious practices." (Pl.'s Mem. 6–7.) Given that Plaintiff did not make these assertions in his Amended Complaint, the Court does not consider them here.

*States*, Nos. 18-CV-769, 11-CR-121, 2018 WL 7080450, at \*5 (S.D.N.Y. Dec. 20, 2018) (clarifying that the petitioner's right to counsel under the Sixth Amendment, which relates only to criminal cases, was not implicated when he alleged that he was deprived of counsel based on the action of a private party, and not by the government or the court); *Williams v. Rosenblatt Sec. Inc.*, 136 F. Supp. 3d 593, 610 (S.D.N.Y. 2015) (finding that the plaintiff's allegation that the defendants, which were private entities, sought to deprive him of employment at other private employers did not state a claim under § 1985(3) because any allegations of violations of the plaintiff's rights under the Fourteenth Amendment would require state action); *Richards v. Giscome*, 597 F. Supp. 40, 42 n.2 (E.D.N.Y. 1984) (finding that the alleged reputation-harming conduct of a reporter was not actionable under § 1985(3)), *aff'd*, 762 F.2d 991 (2d Cir. 1985); *see also Johnson v. Nextel Commc'ns, Inc.*, 763 F. App'x 53, 57 (2d Cir. 2019) (finding that rights to effective counsel or access to the courts are "protected only against infringement by state action," and thus are not reachable when alleged against private parties under § 1985(3) (collecting cases)).

However, § 1985(3) does apply to "wholly private conspiracies . . . aimed at interfering with rights constitutionally protected against private as well as official encroachment . . . such as . . . the right to travel," *Emanuel v. Barry*, 724 F. Supp. 1096, 1100 (E.D.N.Y. 1989) (citation omitted), and the Second Circuit has "held that the Constitution . . . protects the right to travel freely within a single state," *Spencer v. Casavilla*, 903 F.2d 171, 174 (2d Cir. 1990) (citing *King v. New Rochelle Mun. Hous. Auth.*, 442 F.2d 646 (2d Cir. 1971)). Here, Plaintiff alleges that Defendants sought to have Plaintiff kidnapped or murdered, (Am. Compl. ¶ 10), and tried to "incite others to physically injure and/or to support such injuring of Plaintiff," (*id.* ¶ 15). Plaintiff also states that his "ability to walk the streets of New York and Kiryas Joel[] safely and

without fear of being physically attacked, kidnapped[,] and/or murdered" has been impeded. (*Id.* ¶ 26.) Thus, construed liberally, it is plausible that Plaintiff attempts to allege that Defendants acted, at least in part, to deprive him of the right to travel. This could state a § 1985(3) claim. For example, in *Jingrong*, the court found that a conspiracy to deprive the plaintiffs of their right to intrastate travel could be "reasonably inferred" because of the fact that certain defendants had performed acts of violence and intimidation and sought to injure the plaintiffs when they "traverse[d] Flushing[, New York]" in order to spread their religious practice. 287 F. Supp. 3d at 299. Similarly, in *Spencer*, the Second Circuit found that "read with the requisite liberality," the plaintiff adequately stated a claim under § 1985(3) for infringement of his constitutional right to travel because he alleged that he had been "subjected to a racially motivated attack" on account of exercising his "right to travel from place to place within New York State," when he had gone from one county to another to visit his sister. 903 F.2d at 174–176; *cf. Gang v. Zhizhen*, No. 04-CV-1146, 2016 WL 1275026, at *4 (D. Conn. Mar. 31, 2016) (finding that a proposed amendment to the complaint would insufficiently allege a violation of the right to travel because the alleged threats, intimidation, and attacks had taken place at rallies, religious gatherings, and religious centers, and not while the plaintiffs were attempting to travel elsewhere in the state).

However, Plaintiff has not sufficiently alleged that Defendants acted with discriminatory animus in seeking to deprive him of any constitutional right. Thus, the Court need not decide at this stage whether Plaintiff has sufficiently alleged that the purpose of the conspiracy was to deprive him of his constitutional right to travel, and Plaintiff's claim under § 1985(3) is dismissed. Given that this is the first adjudication of Plaintiff's claims, this dismissal is without prejudice. The Court instructs Plaintiff that in order to effectively state a claim that the alleged conspiracy sought to deprive him of a constitutional right, such as the right to travel, he must

claim that Defendants "act[ed] at least in part for the very *purpose* of producing" the deprivation

of the right, and not that they were "merely . . . aware of a deprivation of the right that [they]

cause[d]." *Jingrong*, 287 F. Supp. 3d at 298 (emphasis added) (some quotation marks omitted)

(quoting *Bray*, 506 U.S. at 276). In other words, Plaintiff must allege not only that Defendants

impeded his right to travel, but also that they intended to do so, and that they acted with

discriminatory animus. *See Jenkins v. Miller*, 983 F. Supp. 2d 423, 461–62 (D. Vt. Oct. 24,

2013) (finding that the plaintiffs did not state a claim under § 1985(3) when they claimed that the

"predominant purpose" of the alleged conspiracy was to prevent a parent-child relationship, and

not to prevent a child from intrastate travel).[10, 11]

---

[10] Although not entirely clear**,** Plaintiff may also intend to assert a violation of the "Hindrance Clause" of § 1985(3), which provides that "if two or more persons in any State or Territory conspire . . . for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages," 42 U.S.C. § 1985(3), as Plaintiff alleges that Defendants "employed state and [Kiryas Joel] local police" to protect Thorsen while he spoke against Plaintiff, which caused Plaintiff to believe that he has "no source of protection" if he is attacked in this town, (Am. Compl. ¶ 29).

Although there is an absence of Supreme Court or Second Circuit authority on this clause, the Ninth Circuit has held that such a claim requires that a plaintiff allege the following: "(1) the purpose of the conspiracy must be to interfere with state law enforcement, not just to interfere with the persons seeking to exercise their legal rights; (2) the conspiracy must be directed at a protected class; and (3) the conspiracy must implicate a constitutional right." *Jingrong*, 287 F. Supp. 3d at 300 (alteration and quotation marks omitted) (citing *Nat'l Abortions Fed. v. Operation Rescue*, 8 F.3d 680, 685 (9th Cir. 1993)). Given that Plaintiff does not allege that the *purpose* of this conspiracy was to interfere with New York law enforcement and provides no factual allegations to sufficiently allege that the conspiracy was "directed at a protected class," Plaintiff does not appear to adequately state a claim under this provision. *Cf. id.* at 300–02 (finding that the plaintiff adequately stated a claim under the Hindrance Clause because, inter alia, the plaintiff had alleged several incidents involving state authorities, including that the defendants had prompted a false arrest and that they had asserted "improper influence" over the New York Police Department). Again, however, the Court need not decide this issue here because Plaintiff has failed to sufficiently allege discriminatory animus, and Defendants have not addressed any potential claims under this clause.

[11] Defendants seek to have the Court make several impermissible inferences against Plaintiff by, for example, arguing that Plaintiff brought this suit as a "malicious attempt to

### 2. State Law Claims

Although some Defendants argue that the Court should exercise supplemental jurisdiction over Plaintiff's state law claims, (Thorsen Mem. 10–12), the Court declines to do so at this juncture. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (citations omitted)); *Thomas v. Grunberg 77 LLC*, No. 15-CV-1925, 2017 WL 3263141, at *1 (S.D.N.Y. July 28, 2017) (dismissing state claims where the federal claims had been mooted); *Torres v. City of New York*, 248 F. Supp. 2d 333, 334 (S.D.N.Y. 2003) ("Where the basis for pendent jurisdiction is dismissed, ordinarily so should the state law claims be dismissed." (citations omitted)). To the extent that Plaintiff seeks to file a second amended complaint asserting claims under § 1985(3), Plaintiff may also reassert his claims under state law and cure any potential deficiencies raised by Defendants in their Motions.

### III. Conclusion

For the foregoing reasons, Defendants' Motions To Dismiss are granted. Because this is the first adjudication on the merits of Plaintiff's claims, the dismissal is without prejudice. If Plaintiff wishes to file a second amended complaint addressing the deficiencies discussed in this Opinion & Order, or any other deficiencies raised in Defendants' Motions, Plaintiff must do so within 30 days of the date of this Opinion & Order. Plaintiff is advised that the second amended complaint will replace, not supplement, all prior complaints. The second amended complaint must contain all of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to

---

retaliate" against Mrs. Masri and Thorsen, (Mahon Decl. ¶ 14), and that Plaintiff's allegations are not credible because, for example, he failed to mention in his Amended Complaint that he was married to Mrs. Masri, (Masri Mem. 11). The Court may not make inferences against Plaintiff on a motion to dismiss, and any credibility judgments by the Court at this stage would, of course, be improper.

consider.  If Plaintiff fails to abide by the 30-day deadline, the dismissed claims may be dismissed with prejudice.

The Clerk of Court is respectfully directed to mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

DATED:        March 27, 2020
              White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE